UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. MILLIKEN,<br><br>    Plaintiff,<br><br>v.<br><br>A. MAYLIN, et al.,<br><br>    Defendants. | Case No. 18-cv-03209-JSC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO STAY**<br><br>Re: Dkt. Nos. 26, 28 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights complaint under 42 U.S.C. § 1983 against two officials at Pelican Bay State Prison ("PBSP"), where Plaintiff was formerly housed. He claims that they violated his constitutional rights when they placed him on contraband surveillance watch. The Court reviewed the complaint and found that, when liberally construed, it stated a cognizable claim for the violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Defendants filed a motion for summary judgment.[1] Plaintiff filed an opposition, and Defendants filed a reply brief. Plaintiff also filed a motion to stay the motion for summary judgment to allow him to conduct further discovery. For the reasons discussed below, the motion for summary judgment is GRANTED, and the motion to stay is DENIED.

## DISCUSSION

Plaintiff received an in-person ("contact") visit with his wife at PBSP on March 4, 2017, from 9:00 a.m. to 3:00 p.m.. At approximately 2:00 p.m., correctional officers searched his cell for contraband, but they did not find any. After the visit ended, Plaintiff was escorted to the PBSP

---

[1] All parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (ECF Nos. 1, 13, 14.)

hobby room, where Defendant Maylin scanned him with a "Low Dose Body Scanner." (Maylin Decl. ⁋ 3.) Inmates are scanned following activities in which contraband smuggling is likely, such as in-person visits, to detect whether inmates have ingested contraband or hidden it in a body cavity. (*Id.*; Deters Decl. ⁋ 2.)

The scanner is about the size of an airplane scanner, and the inmate stands on a platform inside while the scanner quickly rotates around the inmate. (Maylin Decl. at ⁋ 2.) The scanner administers a low dose of radiation and within seconds captures a high-definition image of the torso. (*Id.*) Software in the scanner automatically calculates the cumulative amount of radiation given to each individual annually based upon their name and prisoner, issues a warning if the inmate approaches their annual limit, and will not scan once the limit is reached. (*Id.* ⁋ 4, Ex. B.) Plaintiff estimates that between January 1, 2017, and March 6, 2017, he was scanned more than ten times following visits. (Pl. Decl. ⁋ 11.)

Prison policy provides that an inmate may be placed on CSW when a supervisor official has determined that there is reasonable suspicion that he has ingested or secreted contraband. (Deters Decl. ⁋ 2.) Inmates on CSW are placed in an isolated cell, which is first thoroughly searched and cleaned and emptied of all moveable objects except for a mattress and blanket at nighttime. (*Id.* at ⁋ 3.) The inmate's clothing is taped at the hem and the shirt cuff to prevent access to body cavities. (*Id.*) The inmate is placed in handcuffs attached to waist chains and given "hand isolation devices" made of hard plastic tubing to cover the hands. (*Id.* at ⁋⁋ 3-4.) The inmate remains under constant supervision with the lights kept on for a period of 72 hours or until three bowel movements are completed. (*Id.* at ⁋ 2.)

According to Maylin, the scan of Plaintiff on March 4, 2017, showed a black circular item with between Plaintiff's pelvic bones and above his scrotum with a hard outline, which is consistent with a foreign object rather than food. (*Id.* at ⁋ 6.) Maylin's supervisor, Defendant Deters, reviewed the image and found that it was sufficiently suggestive of contraband to warrant placing plaintiff on contraband surveillance watch ("CSW"). (Deters Decl. ⁋ 5.) Plaintiff's placement on CSW was then approved by the "administrative officer on duty" at approximately 3:35 p.m. (*Id.* at ⁋ 6.) Plaintiff asserts that Maylin and Deters lied about what they saw on the

scanned image and that it showed no suggestion of contraband. (ECF No. 1 at 5;[2] No. 30 at 12.)

Following plaintiff's scan, at approximately 3:35 p.m., he was placed on CSW for the next 44 hours, where he remained under constant observation. (Deters Decl. at ¶ 8, Ex. D; ECF No. 1 at 5-6.) He was placed in a holding cell, strip-searched, and given two pairs of boxer shorts (one to wear normally and one to wear backwards) and a shirt that were taped at the cuffs, waist and sleeves. (*Id.*) He was handcuffed to waist restraints and "hand isolation devices," which are a type of restraint made from hard plastic tubing placed over the hands. (*Id.*) The hand restraints were removed at 7:20 p.m. to allow him to eat a hot dinner, and then he was escorted to a cell in the Secured Housing Unit where he remained for the duration of CSW. (Deters Decl. Ex. D.) The cell was approximately 5 x 6 feet and was empty except for a chair. (ECF No. 1 at 5.)

Upon his arrival in the new cell, Plaintiff was strip-searched, and he received new pants, a shirt, and socks, which were taped; the waist restraints, handcuffs, and hand restraints were also reapplied. (Deters Decl. Ex. D.) That evening, a registered nurse checked his medical condition, and he received a mattress and a clean blanket. (*Id.*) The temperature in the cell was 72 degrees. (*Id.*) At 4:45 a.m., the hand restraints were removed and cleaned, Plaintiff urinated and washed his hands with soap and water, a band-aid was applied to a small cut on his finger, and then the restraints and tape were re-applied. (*Id.*) At 6:45 a.m., the hand restraints were removed again, and Plaintiff washed his hands and face with soap and water, ate breakfast and drank coffee. (*Id.*) The hand restraints were cleaned, band-aids were applied to small cuts on his hands and wrists, and he brushed his teeth and washed his hands and face again. (*Id.*) At 8:45 a.m., Plaintiff defecated in a bucket with a bag liner, but no contraband was found; Plaintiff then washed his hands with soap and water before his clothing was re-taped and the hand restraints reapplied. (*Id.*) At 11:00 a.m., Plaintiff ate lunch and drank coffee, at 11:35 a.m., a nurse removed and reapplied his band-aid, at 2:00 p.m., he was medically checked, at 3:55 p.m., he was given medication for a headache, and at 4:32 p.m. he ate dinner and drank water. (*Id.*) At 6:15 p.m., he defecated, and no contraband was discovered. (*Id.*) At approximately 9:00 p.m., he was given a mattress, and at

---

[2] Plaintiff's complaint is "verified," meaning it is sworn under penalty of perjury. (ECF No. 1 at 3.)

10:50 p.m., both Plaintiff and the cell were searched. (*Id.*) Plaintiff and the cell were searched again at 5:05 a.m. the next day, and at 7:00 a.m., he ate breakfast. (*Id.*) He defecated again, and at 11:00 a.m., he was scanned; no contraband was discovered. (*Id.*) At 12:00 p.m., he ate lunch, at 12:50 p.m., he defecated again, no contraband was found, and at 1:05 p.m., he was released from CSW. (*Id.*)

Throughout his time on CSW, the cell was illuminated, and temperature was recorded at 72 and 73 degrees. (*Id.*) When Plaintiff ate a meal, urinated, or had a bowel movement, the tape was removed from his clothing, his hand restraints were removed and cleaned, and he was allowed to wash his hands with soap and water before and after. (*Id.*) The prison records indicate that Plaintiff was scanned twice while on CSW, while Plaintiff states that it occurred four times. (*Id.*; ECF No. 1 at 7.) Plaintiff states that he suffered headaches and sleep loss from the constant illumination, that the restraints caused pain in his back, that he lost property during the search of his cell, that he missed a contact visit, and that he suffered emotionally from having to defecate and urinate into a lined bucket under observation. (ECF No. 1 at 8.)

## DISCUSSION

I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of

4

material fact, the moving party wins. *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

II. Analysis

Plaintiff's allegations about the conditions of his placement on CSW were found, when liberally construed, to state a cognizable claim for the violation of the Eighth Amendment. A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Defendants argue that they are entitled to qualified immunity because the law was not clearly established that the conditions plaintiff faced on CSW were sufficiently serious to violate the Eighth Amendment. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

Whether qualified immunity applies "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). If the violated right is clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). This inquiry must be undertaken in light of the "specific context" of the case. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). It need not be determined that the "very action in question has previously been held unlawful," *Anderson v. Creighton,* 483 U.S. 635, 64 (1987) (internal citation omitted), but, rather, whether "a reasonable officer would have had fair notice that [the action] was unlawful, and that any mistake to the contrary would have been unreasonable." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1059, 1061-62 (9th Cir. 2003).

Even viewing the evidence in a light most favorable to Plaintiff, the law was not clearly established at the time of the incident at issue to give Defendants fair notice that being on CSW for 44 hours was a sufficiently serious deprivation to violate the Eighth Amendment. The Ninth Circuit has declined to decide that placement on CSW for period of six days violated the Eighth Amendment.[3] *See Chappell*, 706 F.3d at 1057 n.4. In *Chappell*, the court found that defendants

---

[3] The court also decided that placement on CSW did not violate the Due Process Clause and granted qualified immunity on the claim that it violated a state-created liberty interest. 706 F.3d at 1063-64.

5

were entitled to qualified immunity because the law was not clearly established at the time (in 2002) that the CSW conditions imposed on the inmate violated the Eighth Amendment. *Id.* at 1057. The conditions in *Chappell* were similar in certain respects to those in this case: a small cell, 24-hour observation and illumination, fecal searches, a plastic "toilet chair" for bowel movements and urinating, two pairs of underwear, taping of clothes, waist chains, handcuffs, and hand isolation devices. *Id.* at 1055–56. In many respects, however, the conditions were worse in *Chappell*: the prisoner was chained to a bed with no mattress, he had to "eat like a dog" because his hands were not released from restraints, and the temperature was "very high."[4] *See id.* Even under these harsher conditions lasting for six days (over three times longer than Plaintiff's placement), the court found that a reasonable official would not have known that such conditions would violate the prisoner's constitutional rights. *See id.* at 1062.

Since *Chappell*, the Ninth Circuit has not ruled whether CSW placement is unconstitutional, *See*, *e.g.*, *Hinkley v. Vail*, 616 F. App'x 274, 274 (9th Cir. 2015) (defendants entitled to qualified immunity because it would not have been clear to reasonable official that 84-hour placement on CSW violated Eighth Amendment); *Centano v. Wilson*, 479 Fed. Appx. 101 (9th Cir. 2012) (finding no genuine dispute of fact as to whether conditions on CSW violated Eighth Amendment); *see also Perez v. Binkele*, No. 18-cv-04856 SI, slip op. 1, 6 (N.D. Cal. Dec. 13, 2018) (Illston, J.) (defendants entitled to qualified immunity because no clearly established law that placement on CSW for six days violated Eighth Amendment). It is Plaintiff's burden to show that the law was clearly established at the time of his CSW placement. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). He has not presented any case law from this or any other circuit --- nor is the Court aware of any --- holding that placement of an inmate on a contraband surveillance watch program or under conditions similar to those he faced, let alone where such placement lasted less than two days, violated the Eighth Amendment.[5] Therefore, the

---

[4] It is unclear from the opinion in *Chappell*, whether, like here, the inmate received medical attention and was able to wash his hands and feet regularly before and after meals, defecating and urinating.
[5] It is Plaintiff's burden to show that the law was clearly established. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

6

law was not clearly established such that a reasonable officer would have known that placing Plaintiff on CSW for 44 hours would violate his constitutional rights. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's claim.

Plaintiff does not dispute that there is no authority that the conditions he faced were not sufficiently serious to implicate violate the first prong of *Farmer*. He instead argues that Defendants violated prison policy by deciding that his scan revealed the presence of contraband because they are not doctors and had received only three hours of training on how to operate the scanner. The violation of prison policy does not in and of itself state a claim under Section 1983, which requires a showing of the violation of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (providing that Section 1983 requires showing of violation of federal law). There is no authority cited or of which the Court is aware suggesting that the Eighth Amendment or other federal law requires an inmate's scan to be assessed by a doctor or that the amount of training Defendants received on operating the scanner was insufficient.

Plaintiff also claims that Defendants lied about seeing the indication of contraband --- a black, circular object with a hard boundary --- on Plaintiff's scan. First, this allegation relates to the Defendants' state of mind and is therefore irrelevant to the analysis of the objective element of his Eighth Amendment claim under *Farmer* --- i.e. whether the conditions Plaintiff faced on CSW were objectively serious enough to rise to the level of an Eighth Amendment violation. Second, the assertion that Defendants lied about what they saw is not supported by any evidence; to the contrary, Defendants submitted the scan in support of their motion for summary judgment and it is consistent with their testimony. (Dkt. No. 26, Ex D; Dkt. No. 27.) That no contraband was ultimately retrieved does not mean that there is a genuine dispute as to whether they saw an indication of contraband on the scan; the contraband could have been absorbed in Plaintiff's body, the scanner could have simply been inaccurate, or they could have mistaken what they saw on the scan as possible contraband. Indeed, Plaintiff presents evidence that in many cases, the indication of contraband on the scanner does not result in the retrieval of it. (ECF No. 30 at 19.)

Plaintiff also complains about the number of times he was scanned. To the extent he is suggesting that this may have jeopardized his health, he presents no evidence to that effect. The only evidence on that issue is Defendants' evidence that the scanner emits a low dose of radiation, tracks the amount of radiation each inmate receives on an annual basis, and automatically does not

scan if an inmate reaches that limit. (Maylin Decl. ¶ 4, Ex. B.) Absent evidence to indicate that his health or safety was jeopardized, there is no triable issue as to whether his Eighth Amendment rights were implicated by the number of scans he received. *See generally Farmer*, 511 U.S. at 837 (providing that prison official may violate Eighth Amendment by deliberate indifference to his health or safety).

Viewing the evidence in a light most favorable to Plaintiff, there is no genuine disputed fact as to whether Defendants could have reasonably known that their actions would have violated Plaintiff's Eighth Amendment rights. Consequently, they are entitled to summary judgment based upon the defense of qualified immunity. Because of this conclusion, the Court does not reach Defendants' alternative argument that the evidence does not show that the conditions Plaintiff faced on CSW violated his Eighth Amendment rights.

III. Motion to Stay

Plaintiff moves to stay summary judgment under Rule 56(d)[6] until he has obtained additional discovery from Defendants. Under Rule 56(d)(1), such a stay may be obtained if the nonmovant shows "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(1). The discovery Plaintiff seeks is not relevant to the issues raised in Defendants' summary judgment motion or the grounds upon which the Court has concluded that it must be granted. He seeks information about the Defendants' training on the scanner, the number of inmates scanned by Defendants who were placed on CSW and produced contraband, and images of the scans performed on Plaintiff other than on March 4, 2017. He also seeks information about the experiences other inmates had on CSW.

It appears from the papers submitted with his opposition, that Plaintiff received much of the information regarding Defendants' training and the rates of CSW placement and contraband production before he filed the opposition. (*See, e.g.,* ECF No. 30 at 13-15, 19.) In any event, while this information may be relevant to the subjective element of the Eighth Amendment analysis, i.e. whether Defendants were deliberately indifferent to his safety, it is not relevant to the objective element upon which Defendants' motion and this Court's analysis are based. Defendants' training, Plaintiff's other scans, the rates other inmates were placed on CSW, the conditions they experienced, and the frequency with which they produced contraband are irrelevant to whether the conditions that Plaintiff faced on CSW were sufficiently harsh to implicate the Eighth Amendment. Further, even if the Court were to conclude the evidence is

---

[6] Plaintiff actually moves under Federal Rule of Civil Procedure 56(f)—the old version of the Rule. The Court has nonetheless fully considered his request as if it was made pursuant to Rule 56(d).

8

sufficient to support a finding of an Eighth Amendment violation, the "clearly established law" prong of the qualified immunity analysis would still dispose of his claim. The Court is not aware of any case that would make the law clearly established for purposes of Plaintiff's claim if he could obtain the discovery he seeks through his Rule 56(d) motion.

As the discovery Plaintiff seeks in his motion to stay is not relevant to the issues raised in the motion for summary judgment, the summary judgment motion has not been stayed under Rule 56(d).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The motion to stay is DENIED.

This Order disposes of Docket Nos. 26 and 28.

**IT IS SO ORDERED.**

Dated: December 27, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. MILLIKEN,<br><br>Plaintiff,<br><br>v.<br><br>A. MAYLIN, et al.,<br><br>Defendants. | Case No. 18-cv-03209-JSC<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 27, 2019, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James M. Milliken ID: F08618
California State Prison
P.O. Box 290066
Represa, CA 95671

Dated: December 27, 2019

Susan Y. Soong
Clerk, United States District Court

By: /s/ Ada Means
Ada Means, Deputy Clerk to the
Honorable JACQUELINE SCOTT CORLEY

10